UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | **REPORT** |
|  | **and** |
| v. | **RECOMMENDATION** |
|  |  |
| CORNELL ANTHONY WHITE, | **06-CV-030S(F)** |
| a/k/a ELIJAH BENNETT, |  |
|  |  |
| Defendant. |  |

_____

APPEARANCES:          TERRANCE P. FLYNN
                      United States Attorney
                      Attorney for Government
                      JOEL L. VIOLANTI
                      Assistant United States Attorney, of Counsel
                      Federal Centre
                      138 Delaware Avenue
                      Buffalo, New York 14202

                      NELSON SALVATORE TORRE, ESQ.
                      Attorney for Defendant
                      1220 Liberty Building
                      424 Main Street
                      Buffalo, New York 14202


## JURISDICTION

This case was referred to the undersigned by Honorable William M. Skretny, on

December 18, 2006, for report and recommendation on dispositive motions.  The

matter is presently before the court on Defendant's motion to suppress evidence (Doc.

No. 12), filed February 27, 2006.


## BACKGROUND

Defendant Cornell Anthony White ("Defendant") was initially charged in a

criminal complaint (Doc. No. 1) ("the Complaint"), dated July 15, 2005, with possession of a firearm previously transported in interstate commerce, despite his status as a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  The Complaint is supported by the attached Affidavit of Robert A. Wilson, Special Agent with United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("the ATF") ("Agent Wilson Affidavit").  The charge stemmed from a search warrant dated July 11, 2005, and executed on July 12, 2005, during which a firearm belonging to Defendant was discovered in an article of Defendant's clothing.  On July 15, 2005, the undersigned issued a warrant for Defendant's arrest (Doc. No. 2), pursuant to which Defendant was arrested on July 18, 2005 and appeared before the undersigned.  A detention hearing was held on July 28, 2005 and, on August 1, 2005, Defendant was ordered detained pending trial (Doc. No. 7).

In a single count indictment returned on January 24, 2006 (Doc. No. 10) ("the Indictment"), Defendant was charged with knowingly possessing a firearm previously transported in interstate commerce, despite Defendant's status as a convicted felon, in violation of 18 U.S.C. §§ 933(g)(1) and 924(a)(2).  A scheduling order filed February 14, 2006 (Doc. No. 11), established February 28, 2006 as the deadline for filing motions. On February 27, 2006, Defendant filed an omnibus motion (Doc. No. 12) ("Defendant's Motion") seeking, *inter alia*, discovery and suppression of his statements and physical evidence seized during the July 12, 2005 execution of the search warrant.  Defendant's motion is supported by the attached Affirmation of Nelson S. Torre, Esq., Defendant's assigned attorney ("Torre Affirmation").  On March 10, 2006, the Government filed the Government's Response in opposition to Defendant's Motion to Suppress (Doc. No. 13)

2

("Government's Response").  Defendant's discovery issues were resolved at oral

argument on Defendant's motion, held April 6, 2006, and decision on the suppression

issue was reserved pending the filing of a transcript of the hearing and further briefing.

April 6, 2006 Minute Entry (Doc. No. 14).

On October 4, 2006, the transcript of the suppression hearing was filed (Doc. No.

15) ("Suppression Hearing Transcript").  A briefing scheduling order filed October 27,

2006 (Doc. No. 16) established November 6, 2006 as the deadline for Defendant to file

a memorandum of law in support of suppression, and November 20, 2006 for the

Government to file a response.  On November 1, 2006, Defendant filed a Memorandum

in Support of Defendant's Motion to Suppress (Doc. No. 17) ("Defendant's

Memorandum").  On November 30, 2006, the Government filed the Government's

Response to Defendant's Post Suppression Hearing Memorandum of Law (Doc. No.

18) ("Government's Memorandum").  By letter to the undersigned dated December 1,

2006, and filed December 6, 2006 (Doc. No. 19), Defendant objected to the

Government's late filing.  Further oral argument was deemed unnecessary.

Based on the following, Defendant's motion to suppress should be DENIED.


**FACTS**[1]

On July 11, 2005, a federal search warrant ("the search warrant") authorizing a

search for drugs and weapons of the residence located in the upper apartment at 316

Potomac Avenue, in the city of Buffalo, New York ("the apartment") was obtained by

---

[1] Taken from the Criminal Complaint, Indictment, motion papers and suppression hearing
transcript filed in this proceeding.

Drug Enforcement Administration ("DEA") Special Agent Joseph S. Bongiovanni.  The search warrant was executed on July 12, 2005, by members of the Special Weapons and Tactics Team ("the SWAT Team"), the Erie County Sheriff's Narcotics Unit and the DEA.

According to Erie County Sheriff's Department Deputy Patricia Mohn ("Deputy Mohn" or "Mohn"), of the Erie County Sheriff's Narcotics Unit, prior to executing the search warrant, Deputy Mohn had been advised of a possibility that a "male" would be present in the apartment, but no other description of such "male" was provided.  T. at 8.[2]  Although Mohn was unaware of Defendant's identity when the search warrant was executed, Mohn testified that Defendant was a target of the investigation and Mohn anticipated when Defendant was found in the apartment, that he would be arrested.  T. at 8.

In particular, at 6:25 A.M. on July 12, 2005, the SWAT Team used a "ram" to break open the door to the apartment, thereby providing entry to said apartment.  T. at 24, 26.[3]  Deputy Mohn, accompanied by the SWAT Team members and several other unidentified law enforcement officers from the Erie County Sheriff's Department Narcotics Unit and the DEA entered the living room at the front of the apartment shouting "police, police, search warrant, search warrant," awakening Defendant who had been asleep on a couch in the living room.  T. at 5-6, 24, 26, 27.[4]  A three-year old

---

[2] Deputy Mohn did not identify the source of such information.

[3] "T." references are to the pages of the transcript of the April 6, 2006 suppression hearing transcript, filed on October 4, 2006 ("Doc. No. 15").

[4] The apartment had at least one bedroom located off the living room.  T. at 34.

male child was also present in the apartment.  T. at 6, 27.  Various items of clothing were strewn about the living room, including shorts, a pair of jeans, some t-shirts, and some child-sized clothing that appeared to belong to the young male child present, as well as a suitcase with some clothing in it.  T. 31, 35-36, 38, 44-45.

Deputy Mohn asked Defendant his name and date of birth, and Defendant identified himself as "Elijah Bennett," date of birth, May 16, 1955.  T. at 7, 20; Agent Wilson Affidavit ¶ 3.[5]  Mohn asked whether Defendant had any identification, and after Defendant responded he did not, the law enforcement officers commenced searching the apartment for drugs and weapons pursuant to the search warrant.  T. at 7, 29, 38. Several SWAT Team members secured Defendant, cuffing Defendant behind his back with "flex cuffs," described as "heavy gauge plastic cuffs that . . . [are] like tie wrap strips."  T. at 9, 27-28.

Mohn estimated there were 12 to 15 law enforcement officers present to execute the search warrant.  T. at 28.  Defendant remained in the living room, seated on the couch, with the young child nearby, while the search warrant was executed.  T. at 28-29.  The entire premises was searched, including all items of clothing, containers, and underneath rugs.  T. at 30.

Defendant, who was dressed only in a t-shirt and boxer under-shorts, repeatedly asked for permission to dress in his shorts.  T. at 6, 8-10, 28, 31, 32.  Deputy Mohn turned toward Defendant and asked Defendant to specify the pair of shorts which Defendant wished to put on and Defendant pointed to a pair of shorts which lay on the

---

[5] According to Deputy Mohn, Defendant also provided a date of birth which Mohn could not recall. T. at 7.

floor of the living room, a couple of feet from where Defendant was handcuffed.  T. at 10, 31.  Deputy Mohn picked up the shorts from the floor, which "felt unusually heavy," asked Defendant if they were Defendant's shorts, to which Defendant affirmatively responded.  T. at 10-11, 33.  As she handled the garment, Deputy Mohn was able to feel a gun located inside the right rear pocket of the shorts.  T. at 11, 13.  Inside the pocket was a loaded Smith & Wesson Model SW 380, .380 caliber pistol, bearing serial number RAF1116 ("the weapon" or "the pistol").  T. at 11-12; Agent Wilson Affidavit ¶ 4.  Mohn removed the weapon from the pocket of the shorts, asked SWAT Team member Deputy Weiss to clear the weapon of ammunition, and then verbally admonished Defendant for leaving a loaded gun in the pocket of Defendant's shorts laying on the floor of an apartment in which a three-year old child was present.  T. at 11-12, 14.

Deputy Mohn told Defendant "you're going to jail" for possession of a weapon and advised Defendant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1996) ("*Miranda* warnings").  T. at 14, 15-16.  Mohn further explained that Defendant's inability to produce identification caused her to believe that Defendant did not have the required pistol permit, thereby rendering Defendant's possession of the weapon unlawful.  T. at 14-15, 19.  After Defendant was arrested and given his *Miranda* warnings, the search of the apartment continued, and a loaded Remington 870, 12 gauge shotgun was discovered underneath a cushion on the couch in the living room.  Agent Wilson Affidavit ¶ 3; T. at 16, 20, 34.  Further searching revealed a Staller Arms, 9 mm semi-automatic handgun, bearing serial number 5846766S, located inside a cardboard box in the rear hallway at the base of the attic.  T. at 34; Agent Wilson Affidavit ¶ 5.

After arresting Defendant and giving the *Miranda* warnings, Deputy Mohn again inquired as to whether Defendant had any identification in the apartment.  T. at 17. Defendant responded he did not, and mentioned that the young child in the apartment was his son of whom Defendant had custody, that Defendant received Social Service assistance, and that the child's mother "wasn't in the picture."  T. at 17, 20.

After Deputy Mohn and the other law enforcement officers finished searching the apartment, Defendant was taken to the Erie County Holding Center ("the Holding Center") where Mohn requested Defendant's fingerprints be run through New York's State Automated Fingerprint Identification System ("SAFIS") to verify Defendant's true identity.  T. at 18.  The SAFIS identified Defendant as Cornell White, also known as Jeffrey Halsell, born January 19, 1960.  T. at 18; Agent Wilson Affidavit ¶ 6.  It was later determined that no pistol permit had been issued to "Elijah Bennett."  T. at 17-18.  A search of Defendant's arrest record showed Defendant had previous felony convictions in both New York and California, and had not been issued any pistol permit.  T. at 19; Agent Wilson Affidavit ¶¶ 6-7.  Defendant had also used other names, including "Michael Anthony Chaves," and "Leroy Bennett."  Agent White Affidavit ¶ 6.

## DISCUSSION

Defendant seeks to suppress statements made and evidence seized during the search of the apartment.  In particular, Defendant maintains that the search warrant issued without probable cause and does not sufficiently specify the place or person to be searched, Torre Affirmation ¶¶ 34-36; Defendant's Memorandum at 9, that the search of the Defendant's clothing in searching the apartment exceeded the scope of

the search warrant, Torre Affirmation ¶ 37; Defendant's Memorandum at 9-10; and that

Defendant was in custody and questioned without first having been advised of the

*Miranda* warning, Torre Affirmation ¶¶ 38-39; Defendant's Memorandum at 4-7.  The

Government argues in opposition that Defendant has failed to establish standing to

challenge the search warrant, Government's Response at 10-11; Government's

Memorandum at 6-8; that the search of the apartment was well within the scope of the

search warrant which was based on probable cause and authorized a search for drugs

and weapons, Government's Response at 11-12; Government's Memorandum at 8-9

and that the only questions put to Defendant prior to giving the *Miranda* warning were

pedigree questions that are not subject to *Miranda*, Government's Response at 12-13;

Government's Memorandum at 3-5.


**1.      Standing**

Fourth Amendment rights are personal rights which may not be vicariously

asserted.  *United States v. Padilla*, 508 U.S. 77, 81-82 (1993)(per curiam); *Rakas v.*

*Illinois*, 439 U.S. 128, 133-34 (1978).  A defendant must have a reasonable expectation

of privacy in the area to be searched in order to contest the validity of a search.  *Rakas,*

439 U.S. at 143; *Katz v. United States*, 389 U.S. 347 (1967).  A defendant's personal

Fourth Amendment right has not been violated when he conceals contraband in the

property of another and that property is subsequently searched unless he had a

reasonable expectation of privacy in the property of the person which was searched.

*Rawlings v. Kentucky*, 448 U.S. 98 (1980).  The defendant "bears the burden of proving

. . . that he had a legitimate expectation of privacy," *Rawlings*,  448 U.S. at 104, which

he may do "by showing that he owned the premises or that he occupied them and had dominion and control over them by leave of the owner." *United States v. Villegas*, 899 F.2d 1324, 1333 (2d Cir. 1990).

"It is well established that in order to challenge a search, a defendant must submit an affidavit from someone with personal knowledge demonstrating sufficient facts to show that [the defendant] had a legally cognizable privacy interest in the searched premises at the time of the search." *United States v. Ruggiero*, 824 F.Supp. at 391.  Affirmations by defense counsel, without any claim of personal knowledge, are insufficient to raise material facts requiring a hearing.  *United States v. Watson*, 404 F.3d 163, 166 (2d Cir. 2005).

Here, Defendant has not submitted any affidavit demonstrating any facts to establish Defendant had a legally cognizable privacy interest in the apartment at the time of the search.  Moreover, the suppression hearing testimony failed to establish exactly what Defendant's interest was in the apartment.  In particular, despite the early morning hour at which the search was conducted, Defendant and his young son were found in the living room, where Defendant was asleep on the couch,[6] rather than in a bedroom.  T. at 45-46.  The testimony also establishes there was an open suitcase on the living room floor, containing some clothing, and other, nondescript clothing strewn about the living room floor.  T. at 31, 35-36, 38, and 44-45.  Such a scene begs the question as to whether Defendant and his son lived in the apartment, or were there for an extended stay, or were merely agents passing through the area.  Furthermore,

---

[6] The record does not indicate whether Defendant's son was also asleep when the search commenced.

9

despite claiming he received Social Services support, Defendant was unable to produce any identification indicating that he listed his address as that of the apartment.  T. at 7, 29, and 38.  Defendant did not challenge any of the suppression hearing testimony.

Deputy Mohn testified on cross-examination that "[i]t appeared that [Defendant] lived there [in the apartment]."  T. at 44-45.  Deputy Mohn also recalled seeing mail addressed to Defendant at the apartment.  T. at 46.  Mohr, however, was unable to recall any paperwork at the apartment tending to show Defendant resided in the apartment.  T. at 39.  Mohn was further unaware that the search warrant application revealed the utilities to the apartment were in the name of one Mercedes Castro, T. 45, and Federal Express packages had been delivered to the apartment in 2005 to one Sharon Moore.  T. at 46.  Mohn's testimony regarding her belief that Defendant resided at the apartment is therefore, without more, insufficient to establish Defendant's standing to challenge the search.

As such, Defendant has failed to establish, as is his burden, any privacy interest in the apartment sufficient to establish standing to challenge the search.  Nevertheless, as the matter is before the court for report and recommendation, the court alternatively addresses Defendant's argument regarding the scope of the search should the District Judge disagree with the recommended finding that Defendant is without standing to challenge the search.

**2.    Scope of the Search**

Defendant contends the scope of the search warrant was exceeded because the search warrant authorized neither the search of the clothing strewn about the floor of

the apartment, nor of Defendant's person.  Torre Affirmation ¶ 37; Defendant's

Memorandum at 9-10.  The Government argues in opposition that a valid search

warrant implicitly provides limited authority to detain occupants of the premises being

searched, Government's Response at 9-10, as well as any articles of clothing found on

the premises, including on the person of any occupants, to ensure the safety of the law

enforcement officers executing the search warrant.  Government's Memorandum at 8-9.

Preliminarily, the court observes that the safety risk inherent in executing a

search warrant for weapons, as in the instant case, sufficiently justifies the use of

handcuffs to detain the occupants of the premises to be searched.  *Muehler v. Mena*,

544 U.S. 93, 100 (2005).  As such, the initial detention of Defendant with handcuffs

upon entering the premises to execute the search warrant was justified.

"[A] warrant to search for contraband founded on probable cause implicitly

carries with it the limited authority to detain the occupants of the premises while a

proper search is conducted."  *Michigan v. Summers*, 452 U.S. 692, 705 (1981).  "A

lawful search of fixed premises generally extends to the entire area in which the object

of the search may be found . . . ."  *United States v. Ross*, 456 U.S. 798, 820-21 (1982).

"Thus, a warrant that authorizes an officer to search a home for illegal weapons also

provides authority to open closets, chests, drawers, and containers in which the

weapon might be found."  *Id*. at 821.

It follows that in the instant case, given that the search warrant authorized a

search for weapons, the search warrant also implicitly authorized a search of anything

within the apartment in which a weapon could be secreted, including the clothing on

floor.  In this case, Defendant does not challenge the validity of the search warrant on

this basis.

As such, Defendant's motion to suppress from evidence the firearms discovered during the search, pursuant to the search warrant, of the apartment should be DENIED.


3.     **Statements**

Defendant seeks to suppress statements he made while in custody and questioned without first having been advised of the *Miranda* warning.  Torre Affirmation ¶¶ 38-39; Defendant's Memorandum at 4-7.  The Government maintains that the only questions put to Defendant prior to giving the *Miranda* warning were pedigree questions that are not subject to *Miranda.*  Government's Response at 12-13; Government's Memorandum at 3-5.

The instant record establishes that the only questions put to Defendant prior to advising of the *Miranda* warning were questions aimed at determining Defendant's identity.  It is well established that "questions aimed at eliciting identifying or 'pedigree' information is permitted without [*Miranda*] warnings, even though the answers to such questions may become evidence either of the particular crime for which the suspect was arrested, or of some past or future crime not yet under investigation."  *Nicholas v. Goord*, 430 F.3d 652, 680 (2d Cir. 2005) (Lynch, J., concurring) (citing *Pennsylvania v. Muniz*, 496 U.S. 582, 590 (1990), and *Rosa v. McCray*, 396 F.3d 210, 221 (2d Cir. 2005)).  *See also United States v. Gotchis*, 803 F.2d 74, 78-79 (2d Cir. 1986) (holding questions posed to arrested defendant, who was given *Miranda* warning and indicated he wished to speak with an attorney, regarding defendant's date of birth, address, telephone number and what the defendant did for a living, was within category of

eliciting basic identifying information and was permissible, despite fact the defendant had previously indicated he had been unemployed for eight years and such fact was used by prosecutor at trial to emphasize the defendant's possession of drugs was intended for distribution).  It is significant that Defendant seeks to suppress only statements made in response to questions seeking to elicit such pedigree information. Defendant's contention that the statements obtained by Deputy Mohn violated his *Miranda* rights is therefore without merit.

Accordingly, Defendant's motion should be DENIED insofar as Defendant seeks to suppress statements made in response to questions seeking to elicit pedigree information.


## **CONCLUSION**

Based on the foregoing, Defendant's motion to suppress (Doc. No. 12) should be DENIED.


Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:        December 20, 2006
              Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Government and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:        December 20, 2006
              Buffalo, New York

14